**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Everardo Lopez, Jr., | ) CIV 08-1469-PHX-PGR (MHB) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Dora B. Schriro, et al., | ) |
| Respondents. | ) |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

Petitioner Everardo Lopez, Jr., who is confined in the Arizona State Prison Complex in Buckeye, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. #1.) Respondents filed an Answer on November 24, 2008 (Doc. #11), and Petitioner filed a Reply on March 9, 2009 (Doc. #15).

## BACKGROUND

Petitioner was convicted in Maricopa County Superior Court, case #CR-2003-014080-008-DT, of use of wire or electronic communications in drug-related transactions and conspiracy to commit transportation of dangerous drugs for sale. (Doc. #11, Exh. G at 99-101.) He was sentenced to concurrent sentences, the longest of which was 15 years' imprisonment. (Doc. #11, Exh. H at 15-16.)

The Arizona Court of Appeals summarized the facts underlying Petitioner's convictions and sentences as follows:

> In October of 2002, the drug enforcement bureau of the Phoenix Police Department began investigating an organization involved in trafficking methamphetamine from Phoenix to other states. The police used pen registers and trap and trace devices to identify telephone numbers. They did follow-up

surveillance and reviewed public and other records to match the telephone numbers with individuals. Through this process, they learned the identities of defendant and Jesus Ortega Ruiz ("Ruiz").

Pursuant to a court order, the police placed wiretaps on Ruiz's home and mobile telephones. They later obtained court permission to place wiretaps on defendant's two mobile telephones. Furnished with information gained from the electronic devices, the police conducted surveillance of targeted individuals to learn their names and nicknames and to observe their activities.

During their surveillance of Ruiz's home, officers observed a maroon Ford F-150 pickup truck ("the truck") with Texas license plates parked in the driveway. Ruiz was not the registered owner of the truck. During the course of the investigation, police observed the truck in Ruiz's possession on other occasions with different license plates on it, including two different temporary Arizona license tags.

Detective David Duron ("Duron") was in charge of the agents monitoring conversations intercepted through the wiretaps. The conversations were in Spanish and contained coded language which referred to drugs and drug-related activities. Fluent in Spanish and experienced in interpreting the coded terminology used by drug dealers, Duron listened to both live and recorded conversations. He also reviewed the English translations of the conversations and compared them with the recordings of those conversations for accuracy.

On March 19, 2003, Ruiz made several calls to defendant to arrange a meeting. Ruiz used the nickname Chile or Chilango and defendant was referred to as Popeye or Papa. On March 23, 2003, defendant called Ruiz to confirm the meeting.

On March 24, 2003, defendant called Ruiz and asked him, "[d]o you want to go over there to my Aunt Virginia?" Duron interpreted this coded language to refer to transporting drugs to Virginia. Duron also interpreted the language as defendant indicating that he would prepare a shipment of drugs for Ruiz to transport and that defendant and Ruiz were to meet at an AM-PM convenience store.

On March 25, 2003, Ruiz called defendant and they agreed defendant would "tune-up" the truck. Ruiz also asked defendant if he was going to "leave it at the mechanic." Duron testified that defendant and Ruiz were discussing loading the truck with drugs and whether to load the drugs in a secret compartment in the truck.

On that same day, a surveillance officer observed Ruiz and a young boy leave his residence in the truck and a female leave in a Dodge Durango. Ruiz drove to an AM-PM store at 27th Avenue and McDowell. He parked the truck in front of the store and got out and spoke for a short time with defendant and another male. Defendant then got into the truck and pulled away. Ruiz and the boy left in the Dodge Durango.

Several officers followed defendant. He drove west on Interstate 10, existed the freeway, made an abrupt turn and stopped in a Wal-Mart parking lot. Defendant remained parked for a short time, made a call on his mobile phone and left in the opposite direction. The wiretap monitors heard the phone

conversation in which defendant advised Ruiz that he was being followed. At that point, the surveillance was terminated.

About an hour later, Ruiz called defendant. Defendant informed Ruiz that he had evaded the police officers, but that they knew what was going on. Ruiz told defendant that he needed to be more alert. Ruiz received a call from an individual known as Marcos who told him that "things were hot," the police were "onto them," and that Ruiz should move out of his house.

On March 26, 2003, defendant called Ruiz and told him that while checking things out, he found "one of those girls ... back there." He asked Ruiz about a "friend[] ... last time you went there." Duron interpreted this to mean that defendant found a package of drugs in a compartment and was asking Ruiz if the drug dealer from another transaction failed to see the package or had given it to Ruiz.

On March 27, 2003, defendant called Ruiz and told him he was "accommodating" or getting the truck ready for Ruiz to pick up. He informed Ruiz that it would be "by the girl's carwash on Van Buren." Later, Ruiz called defendant and said he had not been able to pick up the truck, but when he did, he would leave in the middle of the night.

On March 28, 2003, defendant and Ruiz exchanged several telephone calls in which they discussed the location at which Ruiz was to pick up the truck. Defendant told him it was at a carwash at a specific intersection. They also discussed other drug deals. Defendant asked Ruiz about "money pending from the blond and dark-skinned lady," which was interpreted to refer to money owed to them from past transactions.

Surveillance officers confirmed that the truck was parked at a carwash lot at the location agreed upon by defendant and Ruiz. One officer observed that the truck had a temporary Arizona license plate on it. He left the location for a short while, checked the plate number on the truck and discovered that there was no record of a registered owner. When the officer returned to the carwash lot to determine if he had misread the plate number, the truck was gone.

On March 31, 2003, a deputy of the sheriff's office of Crawford County, Arkansas was on duty on Interstate 40. He observed the truck with a temporary Arizona license tag on it. The tag was unsecured and flapping in the wind so as to obscure it from full view. As a result, he stopped the vehicle.

Ruiz was driving the truck and a woman and child were passengers. When the deputy asked for identification, Ruiz gave a fictitious name. When he asked if he could search the truck, Ruiz consented. Initially, the deputy did not find any drugs inside the truck. However, because he saw suspicious tool marks on a fender, the deputy removed both fenders and found a hidden compartment behind the engine in an area underneath the windshield.

The deputy found seventeen wrapped packages in the compartment. The packages were analyzed and found to contain approximately 16.45 pounds of methamphetamine. Ruiz was arrested. Defendant learned of the situation and called Yarelli Patino and told him "the truck had an accident" or had been stopped, and that there were "losses," meaning the load of drugs was seized.

1  Defendant was arrested on June 11, 2003 after attempting to evade police
2  officers following him in his vehicle. An agent with the Drug Enforcement
   Agency (DEA) was involved in defendant's arrest as well as in the search of
3  his residence.

4  The DEA agent found $20,658 in the crawl space of defendant's attic. The
   police also found what they believed to be a drug transaction ledger as well as
5  a 2002 tax return showing income for that year in the amount of $12,856. The
   officers found documentation showing that defendant owned several houses
6  and appeared to be living beyond his means. The police seized defendant's
   wallet and found $2,300 inside. The DEA agent retrieved the drugs from
7  Arkansas. He testified that the large amount of methamphetamine seized
   indicated that the drug was possessed for sale.

8  (Doc. #11, Exh. M at 2-8, ¶¶ 2-20.)

9      The Maricopa County Grand Jury indicted Petitioner in case #CR-2003-014080-008-

10 DT for using a wire or electronic communication in a drug related transaction, a class 4

11 felony (Count 2 of the indictment), and conspiring to sell or transport dangerous drugs, a

12 class 2 felony (Count 16 of the indictment). (Doc. #11, Exh. A.) On June 16, 2004, a jury

13 found Petitioner guilty as charged. (Doc. #11, Exh. G at 99-101.)

14 **A.    Petitioner's direct appeal**

15     On July 22, 2004, Petitioner filed a timely notice of appeal from his convictions and

16 sentences. (Doc. #11, Exh. I.) On May 16, 2005, Petitioner, through counsel, filed an

17 opening brief, raising eight issues:

18 (1) Petitioner was denied his rights to a fair trial and due process, as guaranteed by the
   Fourteenth Amendment to the United States Constitution and Article 2, § 4 of the Arizona
19 Constitution, when certain witnesses referred to his involvement in a "drug organization" and
   the trial court refused to declare a mistrial (Doc. #11, Exh. J at 10-11);
20
21 (2) The trial court violated Petitioner's rights to confront witnesses, to due process of law,
   and to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United
   States Constitution and Article 2, § 4 of the Arizona Constitution, when it admitted
22 "[h]earsay [t]ranslations and [t]ranscriptions" of certain calls police intercepted (Doc. #11,
   Exh. J at 11-13);
23
24 (3) The trial court denied Petitioner's rights to a fair trial and due process of law as
   guaranteed by the Fourteenth Amendment to the United States Constitution and Article 2,
25 § 4 of the Arizona Constitution when it admitted "[i]mproper [e]xpert [o]pinion[s]" from
   police officers regarding "[d]rug [c]ode" (Doc. #11, Exh. J at 13-15);

26 (4) Count 2 of the indictment (charging use of a wire or electronic communication in a drug
27 transaction) was duplicitous and violated Petitioner's Sixth and Fourteenth Amendment
   rights to notice and a unanimous jury verdict, his Fifth Amendment protection against double
28 jeopardy, and Article 2, §§ 10, 23, and 24 of the Arizona Constitution (Doc. #11, Exh. J at
   15-18);

- 4 -

(5) The trial court violated Rule 19.1 of the Arizona Rules of Criminal Procedure and Petitioner's rights to a fair trial and due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Arctic le 2, § 4 of the Arizona Constitution, by failing to read the final jury instructions before the parties' closing arguments (Doc. #11, Exh. J at 18);

(6) The trial court violated Article 6, § 27 of the Arizona Constitution by commenting on the evidence (Doc. #11, Exh. J at 18-19);

(7) Statements made by certain potential jurors tainted the jury panel and deprived Petitioner of his right to a fair trial and a fair and impartial jury, as guaranteed by the Sixth and Fourteenth Amendments and Article 2, § 24 of the Arizona Constitution (Doc. #11, Exh. J at 19-22); and

(8) The trial court erroneously gave the Portillo[1] reasonable doubt jury instruction, which lowered the State's burden of proof and deprived Petitioner of his right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 2, § 24 of the Arizona Constitution, and his right to a trial by jury, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 23 and 24 of the Arizona Constitution (Doc. #11, Exh. J at 22-23).

The State filed an answering brief on July 27, 2005 (Doc. #11, Exh. K), and Petitioner filed a reply brief on August 11, 2005 (Doc. #11, Exh. L).

On November 17, 2005, the Arizona Court of Appeals rejected Petitioner's claims in a memorandum decision and affirmed his convictions and sentences. (Doc. #11, Exh. M.) On or about December 14, 2005, Petitioner petitioned the Arizona Supreme Court to review the memorandum decision, raising the same claims he presented to the Court of Appeals except (i) his argument that the trial court violated Rule 19.1 of the Arizona Rules of Criminal Procedure, and (ii) his claim that the court commented on the evidence, issues 5 and 6 above.. (Doc. #11, Exh. N.) The State elected not to respond, and instead filed a notice acknowledging the filing of the petition. (Doc. #11, Exh. O.) The Arizona Supreme Court denied review on April 20, 2006. (Doc. #11, Exh. P.)

**B.    Petitioner's PCR proceeding**

On April 27, 2006, Petitioner filed a *pro per* PCR notice, and the trial court subsequently appointed counsel. (Doc. #11, Exhs. Q, R.) On December 28, 2006, counsel notified the court that he had reviewed the record and found no meritorious claims; the court

---

[1]  State v. Portillo, 898 P.2d 970 (Ariz. 1995).

thereafter afforded Petitioner the opportunity to file a *pro per* PCR petition. (Doc. #11, Exhs. S, T.) On March 15, 2007, Petitioner filed his *pro per* petition, raising the following claims:

(1) Petitioner was denied his rights to present witnesses and evidence, to a fair trial, and to due process, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 4 and 24 of the Arizona Constitution when the trial court refused to permit him to testify, and counsel declined to present certain physical evidence and testimony from a witness who purportedly could explain why Petitioner possessed large sums of cash at the time of his arrest (Doc. #11, Exh. U);

(2) Petitioner was denied his rights to be free from illegal search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution and Article 2, § 4 of the Arizona Constitution, and his rights to a fair trial and due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 2, § 8 of the Arizona Constitution, when the trial court admitted evidence seized pursuant to an allegedly defective search warrant (Doc. #11, Exh. U); and

(3) Counsel was ineffective, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article 2, § 24 of the Arizona Constitution, for:

    (a) Failing to object to the purportedly duplicitous indictment;

    (b) Failing to object to certain jury instructions;

    (c) Waiving Petitioner's presence during the conference to settle jury instructions and failing to object to the prosecutor's malicious tactics;

    (d) Failing to move to suppress the evidence illegally seized pursuant to the allegedly defective search warrant;

    (e) Failing to present the aforementioned witnesses and evidence that allegedly would have explained Petitioner's possession of large sums of money; and

    (f) Engaging in various acts of "disloyalty" to Petitioner. (Doc. #11, Exh. U.)

The State filed a response on July 18, 2007 (Doc. #11, Exh. V), and Petitioner filed a reply on July 31, 2007. (Doc. #11, Exh. W.)

On September 5, 2007, the trial court denied the petition. (Doc. #11, Exh. X.) The court found that the duplicitous indictment claim underlying one of Petitioner's ineffective assistance of counsel claims was precluded because Petitioner litigated it on direct appeal. (Doc. #11, Exh. X.) The court further found that Petitioner's "claim that the evidence was illegally seized [was] an issue for appeal," which was precluded under the Arizona Rules of Criminal Procedure because Petitioner did not raise it on direct appeal. (Doc. #11, Exh. X.) The court concluded that the remaining claims failed to present a "material issue of fact or law that would entitle [him] to relief." (Doc. #11, Exh. X.)

Petitioner moved for rehearing on September 19, 2007, challenging the trial court's factual determinations. (Doc. #11, Exh. Y.) Petitioner further construed the court's ruling as precluding his ineffective assistance of counsel claims under Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure, and attacked that determination.[2] (Doc. #11, Exh. Y.) The court denied the motion for rehearing on November 26, 2007. (Doc. #11, Exh. Z.)

On October 2, 2007, Petitioner filed a petition for review in the Arizona Court of Appeals, again challenging the trial court's purported preclusion ruling. (Doc. #11, Exh. AA.) Petitioner also raised the same ineffective assistance of counsel claims and constitutional issues he had presented in his PCR petition. (Doc. #11, Exh. AA.) The State filed a response on October 23, 2007 (Doc. #11, Exh. BB), and Petitioner filed a reply on November 8, 2007. (Doc. #11, Exh. CC.) The Arizona Court of Appeals denied review on May 15, 2008. (Exh. DD.) Petitioner did not petition the Arizona Supreme Court to review his claims.[3] (Doc. #1 at 5.)

**C.     Petitioner's Petition for Writ of Habeas Corpus**

On August 8, 2008, Petitioner filed his Petition for Writ of Habeas Corpus. (Doc. #1.) Petitioner raises seven grounds for relief. In Ground One, Petitioner alleges he was denied his Fourteenth Amendment rights to due process and a fair trial because repeated, improper references were made to his involvement in a drug organization. (Doc. #1 at 6.) In Ground Two, he claims that hearsay translations and transcriptions of intercepted calls were admitted into evidence, thereby depriving him of his Sixth and Fourteenth Amendment rights to confront witnesses against him, due process, and a fair trial. (Doc. #1 at 7.) In Ground Three, Petitioner asserts that his Fourteenth Amendment rights to due process and a fair trial

_____

[2] In their Answer, Respondents disagree with Petitioner's interpretation of the trial court's minute entry. Respondents do not interpret the ruling as precluding Petitioner's ineffective assistance of counsel claims but, rather, as precluding the underlying substantive challenges to the indictment and the admission of the purportedly illegally seized evidence.

[3] In his habeas petition, Petitioner claims to have filed a second PCR petition. (Doc. #1 at 4-5.) The proceeding to which he refers, however, appears to be his petition for review from the trial court's denial of his first PCR proceeding. (Doc. #1 at 4-5.)

were violated by the admission of improper expert testimony from police officers regarding "[d]rug [c]ode" and their interpretations of the "words and thinking" of various speakers. (Doc. #1 at 8.) In Ground Four, he contends that the use-of-wire-communications count was duplicitous, thereby violating his Sixth and Fourteenth Amendment right to notice of the charges, his Sixth and Fourteenth Amendment right to a unanimous jury verdict, and the Fifth Amendment bar on double jeopardy. (Doc. #1 at 9.) In Ground Five, Petitioner claims a violation of his Sixth and Fourteenth Amendment rights to a fair trial by an impartial jury because the jury panel was tainted. (Doc. #1 at 10.) In Ground Six, he alleges that his Sixth and Fourteenth Amendment rights to due process and a jury trial were violated because the reasonable doubt jury instruction lowered the State's burden of proof. (Doc. #1 at 11.) In Ground Seven, Petitioner argues that he received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. (Doc. #1 at 12.)

Respondents filed an Answer on November 24, 2008 (Doc. #11), and Petitioner filed a Reply on March 9, 2009 (Doc. #15).

## DISCUSSION

In their Answer, Respondents claim that Grounds Two through Five set forth in Petitioner's habeas petition are procedurally defaulted. Respondents assert that because Petitioner's procedural defaults cannot be excused, the Court should dismiss the these claims with prejudice. With respect to Grounds One, Six, and Seven, Respondents contend that Petitioner's claims fail on the merits.

**A.      Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or

through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32. The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[4] and "adequate"[5] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

---

[4] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[5] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

Furthermore, a subsequent "silent" denial of review by a higher court simply affirms a lower court's application of a procedural bar. See Ylst, 501 U.S. at 803 ("where ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits").

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris, 489 U.S. at 263 n.9).

In Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h) & 32.2(a)

(precluding claims not raised on appeal or in prior petitions for post-conviction relief, except for narrow exceptions); Ariz.R.Crim.P. 32.4 (time bar). Because Arizona's preclusion rule (Rule 32.2(a)) is both "independent" and "adequate," either its specific application to a claim by an Arizona court, or its operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of that claim by a federal habeas court. See Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of Arizona Rules of Criminal Procedure); State v. Mata, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

### 1. Ground Two

In Ground Two of his habeas petition, Petitioner argues that the trial court violated his Sixth Amendment right to confrontation and his Fourteenth Amendment rights to due process and a fair trial by admitting into evidence telephone conversations police intercepted between Petitioner and others. (Doc. #1 at 7-7.A.)

On direct appeal, Petitioner, citing Crawford v. Washington, 541 U.S. 36 (2004), claimed that the court's admission of translations and transcriptions of intercepted conversations denied his rights to confrontation, due process, and a fair trial under the Sixth and Fourteenth Amendment. (Doc. #11, Exh. J at 11-13.) In the last reasoned state court decision addressing the claim, however, the Arizona Court of Appeals found it waived because Petitioner failed to raise it at trial. (Doc. #11, Exh. M at 12-13, ¶¶ 34-35.) See Wainright, 433 U.S. at 86-91 (where state procedure requires contemporaneous objection to preserve issue for appeal, failure to object bars federal habeas review under independent and adequate state grounds doctrine). The court's limited consideration of the claim's merits in connection with its fundamental error review does not nullify the procedural bar. See

Poland v. Stewart, 117 F.3d 1094, 1105 (9th Cir. 1997) (Arizona's process of fundamental error review does not excuse a petitioner's failure to present federal claims to the state's highest court); Martinez-Villareal v. Lewis, 80 F.3d 1301, 1306 (9th Cir. 1996) (rejecting argument that review for fundamental error by Arizona Supreme Court prevents procedural preclusion).

The Arizona Supreme Court implicitly adopted the Court of Appeals' procedural bar when it silently denied Petitioner's petition for review. (Doc. #11, Exh. P.) See Ylst, 501 U.S. at 802. Petitioner therefore presented Ground Two to the state courts in a procedurally defective manner, resulting in its procedural default.

### 2.    Ground Three

In Ground Three of the habeas petition, Petitioner argues that the trial court violated his Fourteenth Amendment rights to a fair trial and due process by admitting "[i]mproper [e]xpert [o]pinion from [p]olice [o]fficers [r]egarding '[d]rug [c]ode.'" (Doc. #1 at 8-8.C.) According to Petitioner, Detective Duron – who interpreted the intercepted conversations and opined that many of Petitioner's seemingly innocuous statements were code for drug-related activities – improperly testified to the ultimate issue of Petitioner's guilt, and was not qualified to interpret the conversations. (Doc. #1 at 8-8.C.)

As a preliminary matter, the Court notes that Ground Three is a question of state law that is not cognizable on habeas review. The Court can grant habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Petitioner challenges the state court's ruling on the admissibility of Duron's expert testimony, a matter this Court lacks jurisdiction to consider. See Winzer v. Hall, 494 F.3d 1192, 1198 (9th Cir. 2007) ("State court rulings on the admissibility of evidence generally fall outside the scope of federal habeas relief, which is designed only to remedy violations of federal law."). Petitioner's citation to the Fourteenth

Amendment cannot federalize this claim. <u>See</u> <u>Poland v. Stewart</u>, 169 F.3d 573, 584 (9th Cir. 1999) (holding that a petitioner may not "'transform a state law issue into a federal one merely by asserting a violation of due process'") (quoting <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1996)).  Thus, Ground Three does not state a cognizable federal claim.

Even if cognizable on habeas, Ground Three is procedurally defaulted.  First, Petitioner failed to properly exhaust Ground Three as a federal claim in state court, and cannot now return to state court to satisfy the exhaustion requirement.  On direct appeal, Petitioner argued that the trial court improperly admitted expert opinion "from police officers regarding '[d]rug [c]ode' and other '[i]nterpretations' of the words and thinking of various speakers." (Doc. #11, Exhs. J at 13-14; L at 3-5; N at 4-6.)  Petitioner, however, mentioned the Fourteenth Amendment only in passing, and focused his argument on Arizona's evidentiary rules.  (Doc. #11, Exhs. J at 13-14; L at 3-5; N at 4-6.)  The Court finds that Petitioner's "drive-by citation" to the Fourteenth Amendment – detached any from federal legal theory and followed by a discussion of state evidentiary law – was insufficient to fairly present a claim that he was denied his federal rights to due process and a fair trial.  <u>See</u> <u>Castillo</u>, 399 F.3d at 1003.

Likewise, Petitioner's citation to <u>United States v. Hermanek</u>, 289 F.3d 1076 (9th Cir. 2002), is insufficient to fairly present a due process claim.  <u>Hermanek</u> addressed Rule 702 of the Federal Rules of Evidence, not the Fourteenth Amendment, due process, or the right to a fair trial.  Petitioner's "[c]itation of irrelevant federal or state cases does not provide a state court with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." <u>Castillo</u>, 399 F.3d at 1001 (petitioner failed to exhaust due process claim by citing federal cases discussing federal evidentiary rules and the Fifth Amendment privilege against self-incrimination) (citations and quotations omitted).  Petitioner therefore failed to fairly present Ground Three as a federal claim in state court and cannot now return to state court and properly exhaust Ground Three as a federal claim.  <u>See</u> Ariz.R.Crim.P. 32.2 and 32.4(a); <u>Ortiz</u>, 149 F.3d at 931-32; <u>Mata</u>, 916 P.2d at 1050-52.

Moreover, the state courts imposed a procedural bar to avoid reaching the merits. See Ylst, 501 U.S. at 802-05; Insyxiengmay v. Morgan, 403 F.3d 657, 665 (2005). In the last reasoned state court decision addressing the claim, the Arizona Court of Appeals found that Petitioner had waived it by failing to object at trial, and had failed to prove fundamental error. (Doc. #11, Exh. M at 14-16, ¶¶ 38-41.) As discussed previously, the court's waiver ruling constitutes an independent and adequate state procedural disposition that bars federal review, see Wainwright, 433 U.S. at 86-91, and the court's limited consideration of Ground Three's merits does not nullify the procedural bar. See Poland, 117 F.3d at 1105; Martinez-Villareal, 80 F.3d at 1306.

Further, the Arizona Supreme Court implicitly adopted the bar by denying review without comment. See Ylst, 501 U.S. at 802. Because Petitioner failed to present Ground Three in a procedurally proper manner, it is procedurally defaulted.

**3.    Grounds Four and Five**

In Ground Four of his habeas petition, Petitioner contends that Count 2 of the indictment was duplicitous[6], and violated his Sixth and Fourteenth Amendment rights to notice of the charges against him and a unanimous jury verdict, and his Fifth Amendment right to be free from double jeopardy. (Doc. #1 at 9-9.B.) In Ground Five, Petitioner argues that he was denied his right to a fair and impartial jury under the Sixth and Fourteenth Amendments because certain comments during *voir dire* tainted the jury panel. (Doc. #1 at 10-10.C.)

Grounds Four and Five are procedurally defaulted because, in the last reasoned state court decision addressing the claims, the Arizona Court of Appeals imposed a state procedural bar on them, concluding that Petitioner had waived them by failing to raise them at trial. See Wainwright, 433 U.S. at 87-88; (Doc. #11, Exh. M at 16, ¶ 42; Exh. M at 20, ¶ 51.) The appellate court's limited consideration of the claims' merits pursuant to its fundamental error review does not nullify the state procedural bar, see Poland, 117 F.3d at

---

[6]Petitioner also raises the claim that of ineffective assistance of counsel based upon his counsel's failure to object to a duplicitous indictment: this claim is analyzed infra, p. 26.

1105; Martinez-Villareal, 80 F.3d at 1306, and the Arizona Supreme Court implicitly adopted the bar by denying review without comment. See Ylst, 501 U.S. at 802. Because Petitioner presented Grounds Four and Five in a procedurally improper manner, those claims are procedurally defaulted.

**B.    Cause and Prejudice or a Fundamental Miscarriage of Justice**

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

In his Reply, Petitioner appears to address the merits of his claims and recite the arguments made in his habeas petition. (Doc. #15.) To the extent, however, Petitioner attempts to assert that his *pro per* status excuses his failure to properly present his claims, the Court is not persuaded. The law is well-established that a defendant's *pro per* status and lack of legal proficiency do not establish "cause" for his failure to present a federal claim to a state court. See, e.g., Hughes v. Idaho State Board of Corrections, 800 F.2d 905, 909 (9th Cir. 1986); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988).

Likewise, Petitioner's attempts to use a claim of ineffective assistance of counsel to establish "cause" for the procedural default of these claims, are unpersuasive. Petitioner must either: (1) properly exhaust that ineffective assistance of counsel claim by presenting it to the state courts in a context in which its merits will be considered, or (2) if the ineffective assistance of counsel claim is defaulted, the petitioner must satisfy the "cause and prejudice" standard to excuse that procedural default. See Edwards v. Carpenter, 529 U.S. 446, 452-454 (2000); see also Murray, 477 U.S. at 488-489 ("the exhaustion doctrine, which is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); Tacho, 862 F.2d 1376, 1381 (9th Cir.1988) ("To the extent that petitioner is alleging ineffective assistance of *appellate* counsel as cause for the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court."). Petitioner has failed to present the state court with a claim of ineffective assistance of counsel in order to establish "cause" for the procedural default of these claims. Therefore, he cannot now rely on that claim to show cause and prejudice for his procedural default.

Accordingly, Grounds Two through Five set forth in Petitioner's habeas petition are procedurally defaulted, and Petitioner has not established cause for his failure to raise his claims in state court, actual prejudice, or demonstrated that a miscarriage of justice would result if these issues are not addressed. Thus, the Court will recommend that these claims be denied.

**C.    Merits Analysis**

**1.    AEDPA[7] Standard of Review**

Pursuant to the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State

---

[7] Antiterrorism and Effective Death Penalty Act of 1996.

court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review).  "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ."  Robinson, 360 F.3d at 1055.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent."  Williams, 529 U.S. at 404-05.  "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable."  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

### 2.    Ground One – Due process violation based on reference to drug "organization"

In Ground One of his habeas petition, Petitioner argues that he was denied his Fourteenth Amendment rights to due process and a fair trial when the State elicited testimony about the existence of a drug "organization."  (Doc. #1 at 6-6.C.)

In the last reasoned state court decision addressing Ground One, the Arizona Court of Appeals summarized the facts underlying the claim as follows:

> During direct examination, Detective Sterritt testified twice, without objection, that he was investigating a multi-state "organization" that trafficked cocaine and methamphetamine.  The prosecutor asked the detective if he had identified other individuals in the organization.  Defense counsel objected to use of the term "organization," as defendant was only charged with offenses in connection with Ruiz.  Finding that the reference to an "organization" was used for the purpose of describing the investigation, the court overruled the objection.

- 18 -

When Duron testified about the meaning of "Aunt Virginia," he stated that "[s]ince we know the organization was shipping drugs across the nation, they had ties to the state of Virginia." Defense counsel renewed his objection. The court noted that the state could not "take away the context ..." of the conversations showing that Ruiz was involved with other people. However, the court agreed to give a cautionary instruction to the jury indicating that defendant was "not alleged to be part of any organization." The court also advised the prosecutor to tell the detective to limit his use of the word "organization."

During cross-examination, defense counsel questioned Duron about a telephone call that defendant had with someone other than Ruiz. He asked, "[a]nd this other individual isn't charged with conspiring with my client?" The detective responded, "[n]ot directly with your client." Defense counsel then made a motion to strike the answer. The court granted the motion to strike.

Defendant later moved for a mistrial on the ground that Duron continued to refer to the "organization," despite counsel's prior objections. The trial court denied the motion. The court reiterated that it would give a curative instruction and reminded the state to instruct its witnesses to refrain from using this term. At the close of evidence, the court instructed the jury as follows: "Defendant is not alleged to be part of any organization. The only allegations here are as to conspiracy with him and Mr. Ortega Ruiz."

(Doc. #11, Exh. M at 8-10, ¶¶ 25-28, footnote omitted.)

The court construed Petitioner's argument as a challenge to the trial court's denial of Petitioner's motion for a mistrial, and concluded that the use of the term "organization" did not prejudice Petitioner:

We find that the trial court did not abuse its discretion in denying the motion for mistrial. First, as the judge noted, the state's case necessarily involved reference to other individuals. The monitored calls sometimes revealed conversations between defendant or Ruiz and third parties. Second, it is highly improbable that the use of the term "organization" by two witnesses in a limited number of instances influenced the jurors in reaching their verdicts. Also, any possible prejudice was cured by the cautionary instruction.

Defendant relies on *State v. Palenkas*, 188 Ariz. 201, 208-09, 933 P.2d 1269, 1276-77 (App. 1996), to support his argument. In *Palenkas*, over objection, the prosecutor made repeated references to the fact that when the police asked for consent to search the defendant's vehicle, he refused and contacted his lawyer. *Id.* The court had previously granted a motion *in limine* precluding admission of this testimony to prevent the prosecutor from commenting on the defendant's invocation of his Fifth Amendment right to remain silent and his Fourth Amendment right to refuse a warrantless search. *Id.* at 209, 933 P.2d at 1277. Because of the egregiousness of the constitutional violations and the extreme prejudice to the defendant, the court found that defendant's due process right to a fair trial was violated and that the error was not harmless beyond a reasonable doubt. *Id.* at 212-14, 188 P.2d at 1280-82. The facts of *Palenkas* are clearly distinguishable from those of [] this case. We find no abuse of discretion in denying the motion for mistrial.

(Doc. #11, Exh. M at 11-12, ¶¶ 32-33, citations omitted.)

To merit habeas relief, Petitioner must show that the references to a drug organization "so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). As the Court stated in Dowling,

> Judges are not free, in defining 'due process,' to impose on law enforcement officials [their] 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' Rochin v. California, 342 U.S. 165, 170, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952). ... [They] are to determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935), and which define 'the community's sense of fair play and decency,' Rochin v. California, supra, at 173, 72 S.Ct., at 210.

Dowling, 493 U.S. 352-53 (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)).

The Court finds that the use of the term "organization" did not "infect" the proceedings, Jammal, 926 F.2d at 919, but instead occurred only sporadically during the course of a multi-day trial. As the Court of Appeals noted (Doc. #11, Exh. M at 11-12, ¶¶ 32-33), it is unlikely that the scattered references to a drug "organization" influenced the jury's verdicts. Regardless, even if the remarks were somehow prejudicial, the trial court cured such prejudice by instructing the jurors, "Defendant is not alleged to be part of any organization. The only allegations here are as to conspiracy with him and Mr. Ortega Ruiz." (Doc. #11, Exh. G at 9-10.) The Court presumes the jurors followed the instruction, and that said instruction cured any possible prejudice. See, e.g., Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (court generally presumes jury will follow curative instruction); Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997) ("Juries are presumed to follow the court's instructions.").

Thus, the Court finds that references to a drug "organization," did not render Petitioner's trial fundamentally unfair and, therefore, the Court will recommend that Petitioner's claim as alleged in Ground One be denied.

\\\

### 2. Ground Six – Reasonable doubt jury instruction

In Ground Six, Petitioner argues that the trial court violated his Sixth and Fourteenth Amendment rights to due process by giving the Portillo reasonable doubt jury instruction, which allegedly lowered the State's burden of proof. (Doc. #1 at 10-10.C.)

In Portillo, 898 P.2d at 974, the Arizona Supreme Court defined reasonable doubt and required all trial courts in Arizona to give the following reasonable doubt instruction in every criminal case commencing after January 1, 1996:

> The state has the burden of proving the defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not or that its truth is highly probable. In criminal cases such as this, the state's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him/her guilty. If, on the other hand, you think there is a real possibility that he/she is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty.

The Arizona Supreme Court has repeatedly reaffirmed the constitutionality of the Portillo instruction and mandated that trial courts give it. See State v. Orendain, 932 P.2d 1325, 1327 (Ariz. 1997) ("[W]e have previously held and continue to believe that [the *Portillo*] instruction meets requisite constitutional standards."); see also State v. Cañez, 42 P.3d 587, 564 (Ariz. 2002) (reaffirming validity of Portillo instruction).

The Court finds that the Arizona Court of Appeals' decision was neither contrary to, nor did it involve an unreasonable application of, clearly established Federal law. The United States Supreme Court has never required trial courts to give a specific definition of reasonable doubt, and has not disapproved the language in the Portillo instruction. See Victor v. Nebraska, 511 U.S. 1, 5 (1994) (noting that the Constitution does not require courts to define reasonable doubt "as a matter of course," and stating, "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable

doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.") (citations omitted).

Additionally, in mandating the Portillo instruction, the Arizona Supreme Court noted that the Federal Judicial Center recommended it and that it "most fairly and accurately convey[ed] the meaning of reasonable doubt." Portillo, 898 P.2d at 974. The Portillo Court, 898 P.2d at 974, also cited Justice Ginsburg's concurring opinion in Victor, endorsing the Portillo instruction as "clear, straightforward, and accurate":

> This instruction plainly informs the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty. The "firmly convinced" standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a "real possibility" that the defendant is innocent. This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly.

Victor, 511 U.S. at 27.

Accordingly, the Court finds that the Portillo instruction is constitutionally sound, and that the trial court did not violate clearly established Supreme Court authority by giving it. The Court will, therefore, recommend that Petitioner's claim as alleged in Ground Six be denied.

### 3. Ground Seven – Ineffective assistance of counsel

In Ground Seven, Petitioner argues that counsel was ineffective for failing to subpoena a witness and present certain evidence (Ground Seven (a)); object to the allegedly duplicitous indictment (Ground Seven (b)); and move to suppress evidence allegedly seized under an illegal search warrant (Ground Seven (c)). (Doc. #1 at 12-12.G.)

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

- 22 -

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

In reviewing a state court's resolution of an ineffective assistance of counsel claim, the Court considers *only* whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

<u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (citations omitted); <u>see also</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied <u>Strickland</u> incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.") (citations omitted).

Petitioner presented Ground Seven and its subclaims to the trial court and the Court of Appeals in his PCR proceeding. (Doc. #11, Exhs. U, W, Y, AA, CC.) In the last reasoned state court decision addressing his claims, the trial court rejected them in a succinct minute entry stating:

> Defendant asserts an ineffective assistance of counsel claim based on trial counsel's failure to put a witness on the stand, failure to include Defendant in settling the jury instructions, failure to object to a duplicitous indictment, and failure to move to suppress illegally seized evidence.
>
> \*     \*     \*
>
> This Court must determine whether any of the ... claims present a material issue of fact or law that would entitle Defendant to relief. To prove ineffective assistance of counsel, a defendant must show that counsel's performance was deficient (or fell below an objective standard of reasonableness as defined by prevailing professional norms) and actual prejudice (that but for counsel's errors, there is a reasonable probability that the outcome would have been different). *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Rosario*, 195 Ariz. 264, 987 P.2d 226 (App. 1999). Counsel is given deference in making tactical trial decisions, including which witnesses to call. *State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984).
>
> In this case, Defendant has failed to demonstrate that his trial counsel fell below any professional norm. This Court cannot find that counsel's tactical decisions concerning the failure to present a witness and includ[e] Defendant in the legal arguments involved in settling jury instructions are remotely egregious or fell below any professional norm. Even if this prong was met, Defendant fails to meet the second prong, which is to demonstrate what difference it would have made in the jury's finding of guilt. Thus, Defendant fails to present a colorable claim on his ineffective assistance of counsel claim.

(Doc. #11, Exh. X.)  Petitioner thereafter presented his claims to the Arizona Court of Appeals, who denied review without comment.  (Doc. #11, Exhs. AA, CC, DD.)

### a. Ground Seven (a) – Failure to subpoena witness and present evidence

In Ground Seven (a), Petitioner argues that counsel was ineffective for refusing to call a witness who purportedly would have testified (1) that Petitioner was in the business of buying and selling cars, and (2) that she performed mechanical service on the truck in question. (Doc. #1 at 12-12.B.) Petitioner contends that the proffered testimony would have rebutted Detective Duron's interpretation of Petitioner's conversations and his opinion that the term "tune up" was drug code.[8] (Doc. #1 at 12-12.B; Doc. #11, Exh. D at 156-57.)

The trial court's rejection of Ground Seven (a) was neither contrary to, nor did it involve an unreasonable application of Strickland.  See 28 U.S.C. § 2254(d)(1).  Petitioner has failed to overcome the presumption that counsel made a reasoned, tactical decision not to call the witness in question.  See Strickland, 466 U.S. at 689-90.  During a pretrial settlement conference, counsel informed the court that he had interviewed the witness and had "opted not to put her on the witness list" for "ethical reasons." (Doc. #11, Exh. C at 6-7, 13.)  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

Petitioner has also failed to show a "reasonable probability" that the proffered testimony would have changed the verdicts.  Strickland, 466 U.S. at 694.  At best, the

_____

[8] Petitioner also asserts that Ruiz could have testified that Petitioner never agreed to load the truck with drugs. (Doc. #1 at 12.A-12.B.) To the extent Petitioner contends counsel was ineffective for failing to call Ruiz, that claim is procedurally defaulted. Petitioner did not include the claim in his PCR petition. (Doc. #11, Exh. U.) Petitioner raised this claim in his petition for review to the Arizona Court of Appeals (Exh. AA), but did not exhaust it by doing so because raising an issue for the first time on appeal does not constitute fair presentation. See Casey v. Moore, 386 F.3d at 915-19. Petitioner lacks a procedural vehicle for returning to state court to properly exhaust the claim. See Ariz.R.Crim.P. 32.2, 32.4(a); Ortiz, 149 F.3d at 931-32; Mata, 916 P.2d at 1050-52. Consequently, it is procedurally defaulted. Because this claim is procedurally defaulted, and since Petitioner has failed to prove cause and prejudice, or the existence of a fundamental miscarriage of justice to excuse the default, the Court will recommend that this claim be denied.

testimony may have clarified that Petitioner's use of the term "tune up" referred to a genuine mechanical service, but would not have rebutted Detective Duron's interpretation of other statements Petitioner made. (Doc. #11, Exh. M at 2-8, ¶¶ 2-22.)

In Ground Seven (a), Petitioner also attacks counsel for failing to test the truck for fingerprints and failing to present receipts that allegedly showed Petitioner had paid for service on the truck. (Doc. #1 at 12-12.B.) Petitioner, however, did not present the state court – and does not present this Court – with evidence that a fingerprint test would have yielded exculpatory information. As a result, his claim of prejudice is speculative and the Court will reject it. See, e.g., Smith v. Stewart, 140 F.3d 1263, 1274 (9th Cir. 1998) (rejecting claim that counsel should have conducted neutron activation test because petitioner did not tell court "what the results of the test would have been"); Grisby v. Blodgett, 130 F.3d 365, 372-73 (9th Cir. 1997) (petitioner's claim of prejudice from counsel's failure to test blood found on carpet "speculative" where petitioner could not "show that the results of the test would have been in his favor"). Similarly, Petitioner has failed to demonstrate prejudice from counsel's alleged failure to introduce the receipt for a mechanical service on the truck.

Accordingly, the Court finds that the state courts did not unreasonably apply Strickland in rejecting this claim. The Court will recommend that Petitioner's claim as alleged in Ground Seven (a) be denied.

**b.    Ground Seven (b) – Failure to object to duplicitous indictment**

In Ground Seven (b), Petitioner argues that counsel was ineffective for failing to object to Count 2 of the indictment, which Petitioner contends was duplicitous.[9] (Doc. #1 at 12.B-12.D.) According to Petitioner, counsel should have objected to Count 2 because it "charged using a wire or electronic device to facilitate the commission of four separate

---

[9] Petitioner also argues in connection with this claim that the duplicitous indictment denied his constitutional rights to a fair trial, due process of law, notice of the charges against him, and a unanimous jury verdict, and violated the Fifth Amendment protection against double jeopardy. (Doc. #1.) Petitioner presented these claims in Ground Four of his habeas petition, which the Court has found is procedurally defaulted.

crimes,"[10] and therefore failed to give Petitioner adequate notice of the charges against him, threatened a non-unanimous jury verdict, and made a future pleading of double jeopardy impossible. (Doc. #1 at 12.B-12.D.)

The trial court's rejection of Ground Seven (b) was not contrary to, and did not involve an unreasonable application of Strickland. See 28 U.S.C. § 2254(d). Under Arizona law, an indictment is duplicitous if it charges separate crimes in the same count. See State v. Whitney, 768 P.2d 638, 642 (Ariz. 1989); State v. Hamilton, 868 P.2d 986, 993 (Ariz. App. 1993). Arizona law prohibits duplicitous indictments because they fail to give adequate notice of the charge, present a hazard of a non-unanimous jury verdict, and make a precise pleading of double jeopardy impossible in the event of a subsequent prosecution. See Whitney, 768 P.2d at 642; Hamilton, 868 P.2d at 993. "However, in order to prevail on an arguably duplicitous indictment, defendant must demonstrate that he was actually prejudiced thereby." Hamilton, 868 P.2d at 993.

An indictment is not duplicitous "where numerous transactions are merely parts of a larger scheme" and the charge is "a single count encompassing the entire scheme." State v. Via, 704 P.2d 238, 246 (Ariz. 1985); see also State v. Suarez, 670 P.2d 1192, 1197 (Ariz. App. 1983) (concluding "that the indictment charging fraudulent schemes and artifices [was] not void for duplicity," even though the scheme involved 24 separate transactions); State v. Barber, 653 P.2d 29, 33 (Ariz. App. 1982) (concluding that indictment was not duplicitous where "only one crime" was charged, and stating that other allegations did "not allege an additional crime but in fact constitute[d] a part of the execution of the fraudulent scheme and [were] integral to the offense charged").

Here, Count 2 was not duplicitous as it charged a single offense of using a wire or electronic communication to facilitate several acts, and in so doing permissibly encompassed

---

[10] Specifically, Count 2 alleged that Petitioner, "on or between the 19th day of March, 2003 and the 15th day of May, 2003, unlawfully used a wire communication or electronic communication to facilitate the crimes of Sale of Dangerous Drugs, Transportation of Dangerous Drugs for Sale, Possession of Dangerous Drugs for Sale, and Conspiracy to Commit these offenses," in violation of A.R.S. § 13-3417. (Doc. #11, Exh. A.)

numerous transactions that made up a larger scheme. (Doc. #11, Exh. A.) See Via, 704 P.2d at 246; Suarez, 670 P.2d at 1197; Barber, 653 P.2d at 33. Petitioner has failed to demonstrate that he lacked notice of the charge against him such that he could not adequately prepare a defense or that he was "actually prejudiced." See Baines v. Superior Court, 688 P.2d 1037, 1043 (Ariz. App. 1984), superseded by statute on other grounds by, Lifeflite Med. Air Transport, Inc. v. Native Am. Air Svcs., 7 P.3d 158 (Ariz. App. 2000). As the Court of Appeals found, Petitioner's defense was that his conversations with Ruiz were not drug-related and Detective Duron's opinions to the contrary were "mere speculation and assumption and that the discussions were innocent in nature." (Doc. #11, Exh. M at 7-8, ¶ 22.) The Court finds that Petitioner's ability to prove that Duron misinterpreted his comments and that he was not involved with drug activity was not affected by Count 2 in the indictment. See Whitney, 768 P.2d at 642 (no prejudice from alleged duplicitous indictment where "[t]he defendant's defense was that the offenses charged never took place and that the victims merely fabricated their stories"); State v. Ramsey, 124 P.3d 756, 760 (Ariz. App. 2005) (no prejudice from duplicity where defendant's defense was that his wife had framed him).

Moreover, Petitioner's claim that Count 2 presented a hazard of a non-unanimous jury verdict is unpersuasive. As the Court of Appeals noted in connection with its fundamental error review (Doc. #11, Exh. M at 18, ¶¶ 45-46), Petitioner had no right to juror unanimity on how he committed the offense, or the evidence upon which each juror relied to find the offense proven. See Schad v. Arizona, 501 U.S. 624, 631-32 (1991) ("[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.") (citations and quotations omitted); State v. Lopez, 786 P.2d 959, 962 (Ariz. 1990) ("[A]lthough a unanimous jury verdict is required on whether the defendant committed the criminal act charged, a defendant is not entitled to a unanimous verdict on the precise manner in which the act was committed.") (citations and quotations omitted). Petitioner's argument that he cannot plead double jeopardy to defend against a

future prosecution, likewise, fails because a double jeopardy defense is not limited to the four corners of the indictment. Rather, Petitioner can rely on the entire case record "to bar a subsequent prosecution" on double jeopardy grounds. See Barber, 653 P.2d at 34-35.

Furthermore, Petitioner failed to produce evidence in state court, and fails to produce evidence in the present matter, showing counsel's reasons for not challenging the indictment as duplicitous. Absent such evidence, Petitioner cannot overcome the Court's presumption that counsel made a tactical decision not to object. See Murtishaw v. Woodford, 255 F.3d 926, 952 (9th Cir. 2001) (presuming, contrary to defendant's allegations, that counsel notified defendant that submitting to examination would waive privilege against self-incrimination, where the record contained "no supportable allegations to the contrary"); Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption ... . '[W]here the record is incomplete or unclear about [counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.'") (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)).

Accordingly, Petitioner has failed to show a reasonable probability that the trial court would have sustained counsel's objection to the indictment, has failed to prove prejudice, and has failed to demonstrate that counsel's performance was deficient . The Court finds that the state courts did not unreasonably apply Strickland in rejecting this claim and will recommend that Petitioner's claim as alleged in Ground Seven (b) be denied.

**c.    Ground Seven (c) – Failure to move to suppress evidence**

In Ground Seven (c), Petitioner argues that counsel was ineffective for failing to move to suppress evidence officers seized from his home. (Doc. #1 at 12.D-12.G.) Petitioner contends that the search warrant the officers secured was illegal because it was a "no name

blanket search warrant" that a Maricopa Superior Court Judge signed without a supporting affidavit.[11] (Doc. #1 at 12.D-12.G.)

Petitioner has not shown that a motion to suppress would have succeeded, and therefore has not shown prejudice. See, e.g., James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994). A search warrant must describe with particularity the place to be searched and the persons or objects to be seized. See United States v. Grubbs, 547 U.S. 90, 97 (2006). Further, an officer must support his application for a search warrant with an affidavit. See A.R.S. § 13-3914. In this case, Petitioner has presented no evidence that the search warrant did not satisfy these requirements. Petitioner supplied neither the state court nor this Court with a copy of the warrant, or any other evidence to support his assertions. Since Petitioner has failed to substantiate his claim that the warrant was invalid, he has not carried his burden of proving prejudice. See Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (rejecting ineffective assistance of counsel claim based on counsel's failure to interview and call alibi witness, where "there is no evidence in the record that this witness actually exists, other than [the defendant's] self-serving affidavit"); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations do not warrant habeas relief); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[S]elf-serving speculation will not sustain an ineffective assistance claim."); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984) (petitioner must make factual showing to substantiate ineffective assistance of counsel claims).

Petitioner has likewise failed to show that counsel performed deficiently in failing to move to suppress the "fruits" of the search warrant. The record is silent regarding counsel's reasons for not moving to suppress the evidence, and Petitioner cannot overcome the Court's presumption of reasonableness without proffering affirmative evidence of counsel's decision-

---

[11] Petitioner cites the Fourth Amendment in connection with this claim. (Doc. #1 at 12.) To the extent he raises a Fourth Amendment challenge to the search warrant independent of his ineffective assistance of counsel claim, it is not cognizable on habeas review. See Stone v. Powell, 428 U.S. 465, 494-95 (1976).

1  making process. See Murtishaw, 255 F.3d at 952; Chandler, 218 F.3d at 1314 n.15; see also

2  Grayson v. Thompson, 257 F.3d 1194, 1218 (11th Cir. 2001) (defendant could not show

3  deficient performance where record was silent regarding counsel's reason for not filing

4  motion to suppress, and court would presume counsel acted reasonably).  Thus, the state

5  courts did not unreasonably apply Strickland in rejecting this claim.  The Court will

6  recommend that Petitioner's claim as alleged in Ground Seven (c) be denied.

7  **CONCLUSION**

8      Having determined that Grounds Two through Five set forth in Petitioner's habeas

9  petition are procedurally defaulted, and Grounds One, Six, and Seven fail on the merits, the

10  Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and

11  dismissed with prejudice.

12      **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of

13  Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED**

14  **WITH PREJUDICE**;

15      This recommendation is not an order that is immediately appealable to the Ninth

16  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

17  Appellate Procedure, should not be filed until entry of the district court's judgment.  The

18  parties shall have ten days from the date of service of a copy of this recommendation within

19  which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);

20  Fed.R.Civ.P. 6(a), 6(b) and 72.  Objections filed may not exceed seventeen (17) pages,

21  exclusive of attachments.  See LRCiv 7.2(e).  Thereafter, the parties have ten days within

22  which to file a response to the objections.  Responses filed may not exceed eleven (11) pages,

23  exclusive of attachments.  Id.  Failure to timely file objections to the Magistrate Judge's

24  Report and Recommendation may result in the acceptance of the Report and

25  Recommendation by the district court without further review.  See United States v. Reyna-

26  Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual

27  determinations of the Magistrate Judge will be considered a waiver of a party's right to

28

appellate review of the findings of fact in an order of judgment entered pursuant to the

Magistrate Judge's recommendation.  <u>See</u> Fed.R.Civ.P. 72.

DATED this 2nd day of July, 2009.

_Michelle H. Burns_

Michelle H. Burns
United States Magistrate Judge